UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK DANIEL CABAGUA,

                Plaintiff,

v.                                                   Case No. 24-cv-22-pp

WARDEN CHERYL EPLETT, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 8) AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 9)**

        Plaintiff Mark Daniel Cabagua, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1. This decision also resolves the plaintiff's motion to appoint counsel, dkt. no. 8, and his motion for default judgment, dkt. no. 9.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds

1

exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 19, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $23. Dkt. No. 7. The court received that fee on January 26, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that he received inadequate dental care at Oshkosh Correctional Institution beginning in 2013. Dkt. No. 1 at 8. He has sued dentists, medical staff and prison administrators regarding his dental care from 2013 to January 2024.

The plaintiff alleges on July 21, 2013, he filed a dental service request (DSR) informing dental staff at Oshkosh that he needed dental services. Id. The

3

next day, defendant Dr. Donald Linneman saw the plaintiff and filled one tooth. Id. The plaintiff states that his other teeth that needed to be filled did not get treated and defendant Maria Punal Smith, the dental assistant, explained to the plaintiff that he would be put on the routine waiting list to have them filled. Id. The plaintiff alleges that Smith "knew that [the plaintiff] was not receiving adequate care." Id. at 16.

The plaintiff alleges that about two and a half years later, on January 3, 2016, he submitted a DSR explaining that the last tooth that was filled broke and that it was causing him extreme pain. Id. He also said that two other fillings fell out and he wanted them fixed before they got infected and had to be extracted. Id. The plaintiff states that the next day, his tooth number 4 "had to be extracted because it was not tended to in a timely manner." Id. at 8-9. On January 12, 2016, the plaintiff allegedly submitted a DSR stating that a piece of his tooth that had been extracted was still embedded in his gum, his gum area was infected and he was in severe pain. Id. at 9.

The plaintiff alleges that on February 12, 2017, he submitted a DSR stating that four other fillings were causing him pain and that he needed dental care as soon as possible. Id. He says that he had been on the waiting list since January 4, 2016, he was concerned because his teeth were causing him pain and he didn't want to have any more teeth extracted. Id. Defendants Linneman, Dr. Rosenthal, Dr. Eunice Vachet and Smith allegedly failed to take reasonable measures to address the plaintiff's dental needs. Id. at 18.

4

On April 26, 2017, the plaintiff allegedly submitted a DSR stating that one tooth that needed to be filled had broken and the other three teeth that needed to be filled were causing him severe pain. Id. at 9. The next day, defendant Dr. Mark Domrois allegedly filled the broken tooth (tooth #20), but he did not tend to the other three teeth. Id. The plaintiff states that he submitted another DSR stating that the other teeth were still causing him pain. Id. On June 21, 2017, Domrois allegedly saw the plaintiff and explained to him that he would fill teeth numbers 15 and 20, and that if the teeth started throbbing and causing pain, they would need to be extracted. Id.

The plaintiff alleges that on February 27, 2018, he filed a DSR stating that the teeth that had just been filled (numbers 15 and 20) were causing him extreme pain. Id. He states that the next day, teeth numbers 15 and 20 had to be extracted because they had not been tended to at several previous appointments. Id. The plaintiff states that his other three teeth were causing him pain and defendant Smith told him that he would be placed on the routine wait list. Id. From February 27, 2018 until December 14, 2020, the plaintiff allegedly continued to be in pain and discomfort from the other teeth that needed to be filled. Id. at 18.

The plaintiff alleges that on December 14, 2020, he submitted a DSR stating that his tooth was "deteriorating at a severe rate, and that he was in severe pain." Id. at 10. The plaintiff allegedly was placed on the routine waiting list. Id.

5

The plaintiff alleges that he submitted DSRs on January 20, March 15, and April 8, 2021, stating that his tooth was deteriorating at an alarming rate, that he didn't want to lose it and asking to be seen as soon as possible. Id. He states that he received responses saying that he was on the routine waiting list. Id.

On April 20, 2021, the plaintiff allegedly had an appointment with defendants Vachet and Smith. Id. He says that Smith told him that the teeth he had been complaining about were dead and had to be extracted and Vachet stated that she would be able to save tooth number 11. Id. Vachet allegedly saved tooth number11 but she did not treat the other teeth that needed to be filled and just said that the plaintiff would be placed on the routine wait list. Id. Eight days later, on April 28, 2021, defendant Dr. Steven Kinziger allegedly saw the plaintiff and explained to him that his teeth numbers 3, 12 and 31 were dead and had to be extracted. Id. The plaintiff states that two months later, on June 20, 2021, he filed a DSR stating that the area where the last tooth was extracted was painful. Id.

On November 2, 2021, the plaintiff had an appointment with defendant Michele Kleuss, a dental assistant, to have his teeth cleaned. Id. at 11. Kleuss allegedly said that the plaintiff needed three teeth filled, and that his front tooth was deteriorating; Kleuss allegedly told the plaintiff to submit a DSR for his teeth. Id. The plaintiff states that Kleuss said, contrary to what Vachet and Smith told him, that his tooth number 3 was not dead and could be restored. Id. After his appointment with Kleuss, the plaintiff allegedly filed several DSRs

stating that he was in pain and pleading for help because he did not want to lose any more teeth or have any more sleepless nights due to the pain. Id. The plaintiff states that he has submitted fourteen more DSRs pleading for help but that as of the date of the complaint, he still had not been called for dental care and he continues to be in pain. Id.

The plaintiff alleges that the DOC's DAI Policy 500.40.21 Dental Performance and Dashboard Management wait times for service to provide dental care at Oshkosh is inadequate and violates his rights under the Eighth Amendment. Id. at 12. He states that the policy violated his right to adequate and timely dental care, that his pleadings will show a pattern of deliberate indifference by the defendants and that, despite his several DSRs stating that he was in pain, he never received treatment on the teeth that need fillings. Id.

The plaintiff alleges that another incarcerated individual who followed the same complaint procedure as the plaintiff received treatment for his dental needs. Id. He states that Vachet provided care for the other individual but not the plaintiff and asserts that it is "clear that Dr. Vachet discriminately decides who receives dental care and who does not." Id.

The plaintiff requests a preliminary injunction, and he states that he can demonstrate at trial that the continued use of DAI Policy 500.40.21 poses a substantial risk of serious harm to incarcerated individuals. Id. at 13. He states that if the court denies his motion for a preliminary injunction, he will suffer irreparable harm in the form of continued delay and loss of more teeth which will result in unnecessary pain and suffering. Id. The plaintiff asks that

7

the court order the DOC "to provide dental care that assures prompt diagnosis and treatment for [his] serious dental needs; provide care that assures that follow-up care is provided without delay, and to take prompt steps to eliminate backlogs in treatment for [the plaintiff] and others similarly situated." Id. at 14. He also asks the court to order that Oshkosh immediately provide care for him from an outside dentist pursuant to "Rule 35" because he is in pain and discomfort from his front tooth and three other teeth. Id.

The plaintiff states that a decision by Cindy O'Donnell (not a defendant) of the Office of the DOC Secretary on the plaintiff's appeal of Complaint Number OSCI-2023-2684—an administrative complaint the plaintiff filed alleging inadequate dental care—shows that the plaintiff was not seen in accordance with the DAI policy. Id. at 21. O'Donnell's decision, which is an exhibit to the complaint, states:

> The following is the Secretary's decision on the Corrections Complaint Examiner's recommendation of 04/14/2023 in the above appeal: The attached Corrections Complaint Examiner's recommendation to DISMISS this appeal is not accepted as the decision of the Secretary. The decision is to AFFIRM this appeal.
>
> Dr. Panos, the DAI Dental Director, has confirmed that the correct policy that applies here is 500.40.21 which lists the dashboard time frames for different dental events. In that policy, the wait time listed for Routine-Routine (R-R) – Asymptomatic dental care needs is 40 weeks. There is no wait list of up to 18 months.
>
> Section V. B. states, "An inmate patient may be on any wait list for which a request has been received and may be on more than one list.
> 1. Example: If an inmate patient sends in an urgent request, and is already on the routine list, the inmate patient is placed on the urgent list but also remains on the routine list."
> The complainant was placed on the routine list for restorative treatment on 12/16/2021. As noted, the waitlist is 40 weeks.

> The complainant was seen by Dr. Smith on 7/26/2022 and Dr. Smith recommended an extraction. The complainant refused treatment and signed the refusal. This was for dental pain, and the complainant was left on the routine wait list for fillings. Dr. Panos agreed that while the complainant was seen for pain on 7/26/2022, this encounter did not substitute for the requirement to see the complainant within 40 weeks of his initial request on 12/16/2021 for restorative treatment.
>
> The complainant has not been seen timely for restorative treatment in accordance with policy.

Dkt. No. 1-3 at 6-7.

The plaintiff states that O'Donnell stated that the plaintiff "was not seen in accordance with D[AI] policy – therefore policy is unconstitutional due to the years of delay in dental care."[1] Dkt. No. 1 at 22. The plaintiff also states that defendants Warden Eplett and Secretary Carr "are liable for adopting an unconstitutional policy, and liable for failing to ensure that the prison had adequate staffing and resources to address [the plaintiff's] dental needs." Id. According to the plaintiff, Eplett and Carr were aware that the policy was being violated when the plaintiff sent a formal letter on May 31, 2023. Id. The plaintiff alleges that defendant Dr. Panos rubber-stamped the denial of the plaintiff's initial complaint on February 23, 2023, and "[i]t's clear that Panos' decision was based on the findings drafted by [defendant HSU Managers] Ludwig, Pelky and Hollander." Id.

---

[1] The plaintiff appears to interpret O'Donnell as stating that the delay in his receiving dental care comported with the policy and therefore the policy was violated. However, O'Donnell's decision on the appeal states that the DAI policy *was violated* because the plaintiff was not seen within the time constraints set in the policy.

9

At the end of the complaint, the plaintiff reiterates his request for injunctive relief; he asks that the court order the DOC to provide immediate dental care that assures prompt diagnosis and treatment for his serious dental needs. Id. at 23. He also asks that he receive care that assures that follow-up care is provided without delay, and to take prompt steps to eliminate backlogs in treatment for the plaintiff and others similarly situated. Id. The plaintiff also asks the court to order that Oshkosh take him for an examination by an outside dentist under Rule 35 to end the continued pain he is experiencing. Id. In addition to injunctive relief, the plaintiff requests declaratory relief and monetary damages. Id. at 23-24.

C.  Analysis

"Deliberate indifference" to an incarcerated individual's serious medical needs violates the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution. Dobbey v. Mitchell-Lawshea, 806 F.3d 938, 940 (7th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 101, 104 (1976)). To establish a claim of deliberate indifference, the plaintiff must show both that his condition was objectively serious and that the defendants were deliberately indifferent to that condition. Farmer v. Brennan, 511 U.S. 825, 836 (1994); King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012).

Tooth decay and related pain may constitute a serious medical condition. See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."); see also Dobbey, 806 F.3d at 940 (a dental abscess is a serious

10

medical condition that requires prompt medical treatment). Medical doctors may be found deliberately indifferent if they discount, without investigating, an incarcerated individual's symptoms of a serious medical need. Bentz v. Ghosh, 718 F. App'x 413, 417 (7th Cir. 2017) (citing Rivera v. Gupta, 836 F.3d 839, 841-42 (7th Cir. 2016)). A delay in treating "painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640).

The plaintiff alleges that while he has received some dental care, the defendants have delayed in treating his other serious dental issues causing unnecessary pain, infection and loss of teeth. These allegations implicate his rights under the Eighth Amendment. He may proceed on Eighth Amendment claims against defendants Vachet, Smith, Domrois, Kinziger, Linneman and Kleuss in their individual capacities based on allegations that they delayed in treating and/or have not treated, his serious dental needs. The plaintiff also may proceed against defendants Ludwig, Pelky, Hollander and Panos in their individual capacities because he alleges that they knew about the delay in treatment, or lack of treatment, of the plaintiff's painful dental issues and did not address the issue. The court will dismiss defendants Tobias and Rosenthal because the complaint does not contain specific allegations as to how they allegedly violated the plaintiff's rights.

11

The plaintiff's allegations that DAI Policy 500.40.21 violates his constitutional rights do not state a claim. He appears to mistakenly believe that the policy allowed for the delays described in the complaint. As explained in note 1 above, Cindy O'Donnell's decision on the plaintiff's appeal shows that the delays *did not* comport with the DAI policy, so the plaintiff has not stated a claim against defendants Eplett and Carr, whom he alleges were responsible for "adopting an unconstitutional policy[.]" Dkt. No. 1 at 22. The court will dismiss Eplett and Carr.

The plaintiff alleges that he still has not been seen for his dental needs and he requests relief in the form of a preliminary injunction. The court will order the defendants to respond to the plaintiff's request for preliminary injunction and will set a deadline for that response.

### III. Motion to Appoint Counsel (Dkt. No. 8)

The plaintiff contends that the court should recruit a lawyer for him because he raises viable constitutional claims, he is unable to conduct the investigation necessary to uncover the crucial facts of this case, an evidentiary hearing will need to be conducted and he does not the legal skills to litigate. Dkt. No. 8 at 2.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too

12

many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* attorney resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses. The plaintiff has satisfied the requirement that he try to find a lawyer on his own.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong,

the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not satisfied the initial requirement of showing that he has made a reasonable attempt to find a lawyer on his own. He must follow the steps described above to meet this requirement. Because he has not done so, the court will deny without prejudice the plaintiff's motion to appoint counsel. He may renew his motion once he has contacted at least three lawyers and can provide the court with the information described above.

**IV. Motion for Default Judgment (Dkt. No. 9)**

The plaintiff contends that the court should enter default judgment against the defendants because they have not responded to the complaint. Dkt.

14

Case 2:24-cv-00022-PP Filed 05/14/24 Page 14 of 17 Document 11

No. 9 at 1. The defendants are not in default. They have not yet been served with the complaint. This order screens the complaint and will direct service of the complaint on the defendants against whom the court has allowed the plaintiff to proceed. See Rodriguez v. McCloughen, 49 F.4th 1120, 1123 (7th Cir. 2022) ("[D]elay caused by screening under § 1915A is 'good cause' for belated service."). The court will deny the plaintiff's motion for default judgment.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Eplett, Carr, Tobias and Rosenthal.

The court **ORDERS** that the remaining defendants respond to the plaintiff's request for a preliminary injunction (Dkt. No. 1 at 14, B.) by the end of the day on **June 7, 2024**.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 8.

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 9.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Vachet, Smith, Domrois, Kinziger, Linneman, Kleuss, Ludwig, Pelky, Hollander and Panos. Under the informal service agreement, the court

**ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$327** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Oshkosh Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 14th day of May, 2024.

BY THE COURT:

_____
HON. PAMELA PEPPER
Chief United States District Judge